Good morning. May it please the court. Eliodoro Moreno Jr. for the petitioners, Ms. Rosas Roman and her two minor children, Yereni and Brian. I would like to reserve five minutes for rebuttal. In this case, the record evidence compels the conclusion that Ms. Rosas Roman was targeted due to her gender when she was repeatedly called a bitch and raped within the context of pervasive violence against women in Mexico. No other reason exists in the record for her assailant's actions. Here, bitch has no other possible interpretation but as a gender-based slur akin to the n-word for a black person, wetback for an undocumented immigrant, or faggot for a gay or transgender person. Miriam Webster defines bitch as the female dog or quote, a generalized term of abuse and disparagement for a woman. Imagine the exact same facts but with a gay or transgender person who is picked up, repeatedly called faggot and raped. The nexus in that case is obvious. It is equally obvious in this case. The agency's role is to look at the language used by the persecutor and determine whether that establishes nexus. Reversal is required unless this court finds bitch is not a gender-based slur. The agency here... Counsel, can I ask? So the I.J. thought that the word bitch was tangential to a motive of just a general motive to commit crime. Why do you think that's insufficient evidence to support the agency? Your Honor, because no other reason was given for Ms. Rosa Román being picked up, called bitch, and then immediately raped. And then she was called bitch while she was being raped, Your Honor. So the agent... Do you agree the agency, the decision seems to say, well, if a woman is the victim of a crime, that itself couldn't be enough to, or necessarily to meet the nexus standard for this particular social group. And I assume you would agree with that. So it's the genderized terms and the nature of the crime itself, the rape, that tilt us in a different direction in your view. Absolutely, Your Honor. But also in conjunction with the voluminous country condition evidence that's showing pervasive violence against women in Mexico. So the agency here... Can I also ask on this point of what creates an inference of nexus is there were... This is not a case, for example, where they actually robbed her or anything like that in addition to the gender-based violence. Is that correct? Absolutely, Your Honor. And one of the big distinguishing factors from all the cases that the government cited is that almost all of them involved mixed motives. There was another reason. Give me your land. Give me money. Stealing something else from them. Here there was no other reason given. The only thing that happened here was that she was called bitch and then immediately raped. Well, why wouldn't the... My reading of the record was that the agency thought that the only motive was a desire to commit crime. So I thought this might actually be a mixed motive type case. But you don't think so? I don't think so, Your Honor. And the reason I don't think so is because there is no reason. There is no evidence of any other reason given here. The only thing that the government is relying on is speculation, not based on the record. Obviously, there is some speculative factor whenever you're making an analysis of what may happen in the future, but it has to be based on the record. Here there's nothing that they're basing their conclusion. This was random, generalized violence. There was nothing random. Well, I guess I take your argument is there's no evidence of dual motives, but do you agree that the agency was relying on crime as the motive that it thought was driving this matter? Yes, Your Honor. Let me ask you this, because some of our cases about mixed motive say that the agency should consider evidence of alternative motives, and it shouldn't fall into the trap of thinking that there's a false dichotomy, that just because there's one motive that might not relate to a protected ground, it should also look at evidence of another motive, which might be membership in this PSG of Mexican women. Could the agency have erred in not considering that evidence or making this dichotomy as either one or the other? Yes, Your Honor. They would have, but I would say that the that the court would not even need to get to that point, because really this court's case law makes clear that an applicant's uncontroverted, credible testimonies to the persecutor's motive may be sufficient to establish nexus. Said this in Garcia v. Wilkinson. And then also, this court has made clear that when there's no evidence of other possible motives, then there the court should credit the respondent's testimony, especially if it's supported by the only evidence that exists here in this case. I would argue that the government stating that this is just general crime is pure speculation. In other cases where this court has found that it is just pure crime, they have found so because the persecutor themselves gave evidence of that through, give me your money, give me your land. None of that occurred in this case. But I take it that, not to make the argument for you, that you want to keep this a single motive case. If it were a mixed motive case, you still think you could prevail? Oh, absolutely. But you don't think we need to go there in this case? No, exactly, Your Honor. I do believe that we win under either analysis, but of course I don't believe that we need to go there. And then here, again, what the government, in the way that the government erred, is that they divorced Ms. Rosa's romance status from its analysis of her assailant's actions and the surrounding circumstances. If this were truly a case of random, generalized violence, as the agency held, then that would require the record to demonstrate that a man walking down the street is equally as likely to be picked up, repeatedly called bitch, and raped. The record compels the contrary conclusion here. For example, gender-based violence against women and girls is widespread in Mexico, so much so that the UN has called it a pandemic. It is estimated that 66% of women in Mexico have suffered some form of gender-based violence. Seven women are killed daily in Mexico. 92% of cases go unpunished. Thousands of women have been reported missing. Violence against women is so rife in Mexico that there's no political cost for those who ignore it. Critically, the country conditions state that gender-based violence in Mexico are not isolated, sporadic, or individual episodes of violence, but rather, quote, a structural situation and a social and cultural phenomenon rooted in customs and beliefs and are a result of a culture of gender-based violence and discrimination. The attempts by the agency to couch this country conditions evidence as generalized evidence was error. As the examples illustrate, the hundreds of pages of country condition evidence are specifically tailored to Ms. Rosa's romance particular circumstances because they describe the rampant violence against Mexican females, a particular social group that she is a member of. Simply because Ms. Rosa's romance is not personally described in country conditions does not make them general. The agency commits this error regularly, stating that country conditions are magically general, even if they specifically talk about people similarly situated as the petitioner is here in this case. Well, let me ask this. I mean, the logical extension of your argument would be that any woman that is subject to removal to Mexico might face a particularized risk of harm if returned to Mexico. Is that what you're getting at with the country conditions evidence or does there need to be more or something different about this case? Oh, there is something more in different about this case. What's that? It's not just the country conditions. The court has to look at the totality of the circumstances surrounding the incidents that Ms. Rosa's romance suffered. Here, the specific fact that she was repeatedly called bitch and then immediately raped, I think that is critical in conjunction with the country conditions. What the country conditions do is that they provide important context to this court for evaluating the actions of the persecutor and also what the respondents suffered. This court made that very, very clear in Sharma, a case that the government cited themselves, that says that political and social turmoil in the petitioner's home country can provide relevant context for the petitioner's personal experiences. And that's something exactly what the country conditions do in this case. So here, the agency found that Ms. Rosa's romance PhD of Mexican females was cognizable, that her rape rose to the level of persecution, and the record compels the conclusion that one reason for that harm was an account of her gender. As a result, remand to the agency is required for the agency to apply the presumption that Ms. Rosa's romance suffered past persecution and thus she has a rebuttable presumption of a found in fear. There was something in the record where she initially tried to report the crime to, was it to a district attorney, to a prosecutor's office, or to the police? No, first she went to a police station. And then she was turned away. That's right. Now, do you ascribe that as something that supports your evidence that it's, you know, violence happens against women with impunity, that there's no accountability for it, or there was a flavor of it that it might be money related to? How would you describe that? That definitely goes to unwilling and unable, and also to acquiescence in the CAD context, Your Honor. She went to try to report her. They pushed her away, tried to demand money from her. Indignant, she had to drive hours away. And then, critically, the expert, the uncontested expert, then analyzed. The next evidence is very important. She went to another office, reported the incident, but then they listed the crime as simply deprivation of liberty. The expert shows that that is critical evidence demonstrating that they just laugh off gender-based violence. Now, acquiescence is not before us now. We're just looking at nexus. Right. Okay. Right. But does any of that evidence go to nexus itself, in your view? I think it does, Your Honor, because it corroborates the country-conditioned evidence talking about that this gender-based violence occurs with impunity within Mexico. So it's definitely another evidence of that. And with that, I would reserve the remainder of my time. Very well. Thank you, counsel. May it please the Court, Matthew George for the Attorney General. Judge Sanchez, I'd like to address your point about the reporting evidence going to nexus. The issue with nexus is really looking at what is the motivation of the attackers in this case. And so what other people did down the line, what especially government officials may have done down the line, doesn't really inform us of what was in the minds of the attackers at the time of the incident. That's really the focus of the nexus inquiry. Maybe it tells us more about country conditions. It is more relevant with regard to acquiescence, which it doesn't show acquiescence in looking at the totality of the circumstances. But in terms of what motivated these particular attackers, it's completely divorced from whatever was in their mind at the time of the incident. That's really the focus of the nexus inquiry in this case, is what was in the heads of the attackers. And here the agency had two reasonable choices. One was it was motivated by petitioner's membership in a group of Mexican females. The other reasonable possibility was it was general crime and violence. I think we'd all agree it's generally violent in this area of Mexico, and there's plenty of evidence to show there's general violence in Mexico. Well, counsel, what do we make of the fact that the BIA's decision makes no mention or analysis of the use of the bitch? I think I counted four times every time that the attackers referred to her, they used the word bitch. They said pretty girl. There were these genderized, there's genderized evidence of what occurred in this violent rape, and yet the BIA didn't analyze any of that. And so it makes one potentially wonder if they did consider evidence of membership in the PSG, or perhaps committed error by just focusing solely on general crime as a motive, as if there might not also be another protected nexus ground. Well, here they use the words, as your honor just did, the word solely. They said this was solely motivated by general crime and violence. I realize that it would be nicer to have a little more fulsome analysis, maybe, as your honor is pointing out. But don't our cases require some analysis as to the possibility that there is, whether it's for a central reason or a reason, that the BIA cannot ignore other evidence that might connect to nexus as it's weighing the types of evidence that's before it? That's correct, and the board did hear. It did, it's not a very lengthy analysis, I will admit that, but it did say we've considered the reasons the immigration judge found, and they aren't clearly erroneous, and we agree that this was solely on account of general crime and violence. And again, given those two choices that the agency had, two reasonable choices, it's not about, at this point, whether one or the other is more convincing. It's about, does one now compel any reasonable fact finder to reach that conclusion? And so, yes, there is evidence in the record of the word bitch, the word pretty, and to whatever extent we were looking for you, or we know you have children, or something like that, whatever that means, that could lead a reasonable fact finder to find that they were motivated, and what was in the head of the attackers, that they were motivated by her membership in a group of Mexican females. However, an equally reasonable possibility is that general crime and violence. I realize it's a lot easier to grab onto that general crime and violence when there is sort of that secondary motive. But what is the substantial evidence? What is the evidence that supports a finding of a non-gendered motive? That's what I kind of wanted to pose rhetorically, in a way. It's like, if I were to, for example, go into a high crime area in a city in the United States, and I'm just beaten up by a gang or something, does that mean they're motivated by some manner of my identity? Or is it just, it's generally a high crime area, and crime happens to people who go in that area? I don't know that we need explicit evidence of that. That should just be a... But counsel, I can understand if it was a robbery, I get it. But this is not a robbery. And so, since it's not being contested in the social group here, I think there's a whole other issue to this case, which is really not before us. This is whether this is truly a recognizable social group. I agree, Rob. But to Judge Song's question, I mean, the words that were used and the actual act involved here, at least for mixed motive, I mean, can it, doesn't it have to be at least something that the BIA should have at least talked about? It would be nice if they said more about it, yes. But by the fact that they used the word solely, that shows that they were considering more than one particular... Then why isn't that, I mean, how does the records not compel the finding that it's not solely generalized? I'm a little confused by that question of how the record doesn't compel... There's a standard of review here, is right, that the BIA is finding that it's 100% not a gender-based motive, essentially, has to be supported by substantial evidence. But here there's lots of evidence pointing to a gendered motive. So how can we find that substantial evidence supports the BIA's finding that essentially 100% of the motive was general? Well, one example is what I pointed out in my brief of there is evidence, country conditions evidence in the record that gangs or other organized crime engage in these sort of crime sprees as the so-called spoils of war, and rape is one of those acts that is explicitly mentioned in that report. And so there is some, and there's also other reports that say it's generally violent, and crime and violence have been increasing in Mexico generally. My other point in terms of, I know it's a lot easier when there is sort of that secondary motive, I think the court had mentioned theft in general, or land, as my opponent mentioned, when there is that other sort of thing we can grab onto. However, that doesn't take it outside the realm of sort of general crime, even when there's no other sort of secondary motive. It's still just crime, it's still just violence, just because it doesn't have that additional motivation in that, oh we wanted money, or we wanted land, we wanted something tangible. They may have just wanted to engage in crime because they're degenerate individuals who like to engage in depravity. But let's assume, I'm going to change the hypothetical a little bit, let's say right here in San Francisco, an elderly Chinese man is beaten and robbed, and during the robbery they use a bunch of ethnic slurs towards this old man. I mean, isn't there at least some evidence that it wasn't solely due to general crime, that maybe they wanted to rob someone and they don't like Chinese people, and that's why they're doing it? If that's right, how is that case not, isn't that the same as this case? Well, some doesn't mean compel. At this point we're looking at compelling. Right, but the word the board used was solely. I think that's the problem here. So why, if in the example I just used, we can all agree it wasn't solely based on general crime, that it was because this guy was Chinese, how is that different than this case? Because the board here found that her status as a woman, as a Mexican female, played no role. The question is, why is that finding supported by substantial evidence when there's, I think, speaking for myself, evidence that compels a conclusion that it is at least a mixed motive? I guess I don't know how I can say any more other than there is general crime. I'll say that the court has unpublished decisions saying that sexual violence can occur to a man as well. I think that might be some of the, sort of, the frame we're sort of stuck in, and that sexual violence... Wait, but we have this case here where, as your opposing counsel pointed out, in addition to the crime, the nature of the crime being sexual assault, you also have explicit direct evidence of gender-based motive. So that's the use of the slur. So this is not a case in which it is, you know, there is no evidence of a gender-based motive. Right. And I'm not saying there's no evidence. I'm saying that it doesn't compel the conclusion, and the agency had a choice between two reasonable alternatives. It selected one, and now that's conclusive unless there is that compelling evidence. Well, so how does that work? Let's just take for withholding, because even if there's a motive for general crime, that would not preclude relief for withholding a removal if the attackers were also motivated, at least in part, based on her status as a Mexican woman. Why doesn't the evidence compel the conclusion that, at least in part, the attack was motivated by her status as a Mexican woman, given violent rape, calling her bitch repeatedly, calling her a pretty one, knocking out her front teeth, you know, the threats against her family? Why doesn't the evidence compel the at least for that, if not one central reason? Because it's sort of the same inquiry. We're still looking at—the board considered that by the use of the word solely. It's not about whether it compels a conclusion that they used a mixed motive analysis. They did use a mixed motive analysis, and that's evidenced, again, by the word solely. So now it's whether the evidence compels that at least a reason was her membership in the social group of Mexican females. So if this isn't the case that would compel some—what case would compel the conclusion that someone who's a member of Mexican Women would have been targeted? I mean, that would be really up to the agency to say. I mean, I could speculate, I guess, if that's sort of what the court is asking me to do. I'd say the use of the term here, bitch, is not really—I don't think, personally, it's the same as some of the other derogatories or slurs that my opponent mentioned. Certainly ones you can't say out loud, or we have to use sort of something for that, they're not on the same level. I think there are other derogatory words for women that probably shouldn't be said out loud, and bitch is not one of them. So I'm not sure, sort of even colloquially, that's kind of a common term to use. We don't have any evidence of how it's used in Mexico. I can say from personal experience, it's widely used in the United States to refer to both men and women. It has no really connection to a gender-based usage necessarily. And the same with the word isn't necessarily a gender-linked type of term. I mean, anyone can be pretty. I think men and women are called pretty all the time. And so when we're looking at, I think, a grand total of three words by my count, what that tells us about the motivation, what's going on in the attacker's heads, a fact finder could say that's enough to reach that conclusion, or say it's a mixed motive that played a role, a reason, in the motivation. But it doesn't compel any reasonable fact finder to find that. That's essentially what that standard is saying, is that any reasonable fact finder would say, no, that's the only reason, or at least that played at minimum a reason. Well, no, not only a reason. I think you're reversing it, because withholding, it's at least a reason, right? And for asylum, it's one central reason. But even for asylum, one central reason can permit multiple primary reasons for the crime. And I think the difficulty of your position is it's hard to look at this evidence and see that gender didn't at least play some role in this. And I, at least, am not seeing that much analysis from the agency really engaging with that kind of evidence. Right. I agree. Like I've said, I don't want to, I know it's probably boring to hear it again, but I don't have much to work with the board. I would have loved it if the board gave us more to work with. But they do use the word solely. I mean, that's, I know that's not much to hang a hat on, but that is some evidence that they did consider all of the evidence, all of the motivations. And again, sort of backing out and looking at the general circumstances of this incident, she didn't know these people before. She was grabbed off the street. Yes, they said, they alluded that they knew her. I mean, we don't know what, if they actually knew her, if they were, you know, casing her, for example, or something like that. In a way that suggests more that they were targeting her specifically, that they weren't interested in some sort of general animus against Mexican females. They were interested in this petitioner, particularly. Looking at all that, I mean, that's the overall record that the court is confronted with. And so it has to say all of that compels that at least played a reason, or in a mixed motive analysis, that that played at least a reason. There's just not enough here to compel that. And another reasonable finding is what the agency reached here was that it was solely general crime and violence. Thank you. Thank you, counsel. Appreciate it.  Your Honors, what the agency is asking this court to do is, Your Honor, you asked me earlier that, is it sufficient that it's just gender-based country conditions could then immediately equate that any harm that the respondent suffered would be based on her gender? I said no, because you have to look at the surrounding circumstances. But what the agency is asking this court to do right now is to do exactly the same thing, but on the other side. They're saying, oh, also violence just happens generally. So because general violence also happens there, then it's reasonable to say that she was targeted because of that when there's no other evidence supporting that conclusion. That is not sufficient. And just because, and one central reason doesn't mean the only reason, Your Honor. One central reason for Ms. Rosas-Romine's harm here is because of her gender. Also, going back to when she went to the police and they refused to take a report, that does support Nexus here. Because one of the things that Nexus talks about is that assailants commit crimes and target women specifically because they think they're inferior to men, but also because they know that there's going to be impunity. No one's going to do anything to them for doing that violence. What's your record cite for that? Yes. So here, so specifically we go to the unconfessed expert report. This is AR-249, where the expert report specifically talks about this specific issue. And thus, Your Honor, based on those reasons, this is the only evidence in the record is because of her gender. But even if this court believed that there could be some other evidence in the record, and this is a mixed motive case, and even then it succeeds because at least one central reason for her harm, based on the surrounding circumstances, is because of her gender. Because that's the only thing that they alluded to when they went ahead and detained her and then raped her. Let me ask this, counsel. Isn't the agency entitled to look at, I'm trying to think of, I'm grappling with your argument that there is no evidence other than gender-based. Why can't the agency look at a crime and say, just from the nature of the crime having occurred, that a motivation was to commit that crime? Why would the agency need to find something in addition to that saying, oh, I wanted to rob someone because I'm poor. I want some extra money. Why can't the agency just look at the fact that a one of the key things here is the court just mentioned, oh, I wanted to commit that robbery because I'm poor. Yes, when someone's committing a robbery, Your Honor. But there's no evidence of a robbery being committed here. And just stating that, whenever someone is harmed in any country, it usually is going to be a crime, unless it's government sanctions in some way. And even then, we say, well, some government sanctioning is still a crime and still would fact that something is a crime when someone is harmed doesn't generally mean that it's going to take it out of the ambit of being on account of a protected ground. What's critical here is to look at the surrounding circumstances, and particularly what the assailant specifically said to the respondent in this case. And that's what's critical for that analysis, Your Honor. And in all of these cases where the court has held generalized violence is because, aside from that violence occurs in that country, there is other evidence of other motives, like I mentioned before, of someone being wrong. So that is what's the key difference here, Your Honor. And this court should reverse the agency's decision. Thank you for your time. All right. Thank you, counsel. Thank you both. It is nice to have excellent counsel. I really appreciate both of your efforts today. Very much so. This matter is submitted, and we are done for today. Thank you.
judges: OWENS, SUNG, SANCHEZ